**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

**J. SCOT REID**

Plaintiff,

v. **Case No. _______________**

**BRITTANY MASON,** **JURY DEMAND**

Defendant.

---

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## NATURE OF THE ACTION

1. Plaintiff J. SCOT REID ("Reid" or "Plaintiff") brings this action against Defendant BRITTANY MASON ("Mason" or "Defendant") for defamation, defamation per se, and false light invasion of privacy. Mason has conducted a sustained and malicious campaign of publishing false and defamatory statements about Reid on social media platforms, including Facebook, Instagram, and podcasts, falsely accusing him of, among other things, fraud, theft, blackmail, corruption, and involvement in sexual misconduct. These false statements have caused, and continue to cause, serious harm to Reid's personal and professional reputation, his business relationships, and his livelihood.

2. By this Complaint, Reid seeks compensatory damages, presumed damages, special damages, punitive damages, and injunctive relief to stop Mason's ongoing tortious conduct.

## PARTIES

3. Plaintiff J. Scot Reid is an individual and citizen of the State of Indiana. Reid operates pageant production companies, including those that produce the Miss Indiana USA and Miss Indiana Teen USA pageants under license from the Miss USA organization. Reid produced these pageants from 2021-2026 through his companies, including Crown Moxie LLC, an Indiana limited liability company with its principal place of business in Indianapolis, Indiana.

4. Upon information and belief, Defendant Brittany Mason is an individual who resides at 10115 Jeffreys St, Apt 2042, Las Vegas, Nevada 89183-7901. Mason is the former co-director of the 2021 Miss Indiana USA and Miss Indiana Teen USA pageants, after which her business relationship with Reid ended. Mason has not been involved in the production of any subsequent pageants.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship). Plaintiff is a citizen of the State of Indiana. Upon information and belief, Defendant is a citizen of the State of Nevada. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, including the publication and receipt of the defamatory statements and the resulting harm to Plaintiff's reputation in Indiana and his business he operates in the State of Indiana, thus Defendant is subject to personal jurisdiction in this judicial district. Moreover, Defendant held the Miss Indiana title in 2008 and still uses this title on social media wherein she presents herself to residents of Indiana as

demonstrated by Indiana residents and organizations engaging with her social media content. Via social media, Defendant has urged Indiana residents to avoid Plaintiff's pageants.

**FACTUAL BACKGROUND**

7. Plaintiff and Defendant met in 2004 and were friends for several years.

8. Upon information and belief, in 2019, Defendant was engaged to be married. Her fiancé owned 100% of the entity MOXIE MEDIA PRODUCTIONS USA, LLC. Defendant's then fiancé asked Plaintiff to co-direct the 2021 Indiana USA Pageant with him.

9. In 2021, Defendant's fiancé ended his relationship with Defendant and sold MOXIE MEDIA PRODUCTIONS USA, LLC to Plaintiff. MOXIE MEDIA PRODUCTIONS USA, LLC held the Miss Indiana USA license. After the sale, Plaintiff owned 100% of MOXIE MEDIA PRODUCTIONS USA, LLC. See MEMBERSHIP INTEREST PURCHASE AGREEMENT IN MOXIE MEDIA PRODUCTIONS USA, LLC, attached as Exhibit A. Further, after the sale, the Miss USA organization approved Crown Moxie LLC to produce the 2021 Miss Indiana USA and Miss Indiana Teen USA pageants.

10. After Reid purchased MOXIE MEDIA PRODUCTIONS USA, LLC, Plaintiff and Defendant served as co-directors for the Miss Indiana USA and Miss Indiana Teen USA pageants for the 2021 competition cycle. However, Defendant had no ownership interest in the entity, MOXIE MEDIA PRODUCTIONS USA, LLC that initially held the license to produce the pageants, nor did Defendant have ownership interest in Crown Moxie, LLC that produced these pageants.

11. Due to her behavior relating to the Miss Indiana USA and Miss Indiana Teen USA pageants including missing director meetings and other scheduled calls, failing to communicate

with necessary individuals, and negative social media posts, Plaintiff instructed Defendant to step down as co-director of the Miss Indiana USA and Miss Indiana Teen USA pageants.

12. Following the conclusion of the 2021 pageant cycle, the business relationship between Reid and Mason ended. Reid, through his companies, continued to produce the Miss Indiana USA and Miss Indiana Teen USA pageants from 2022 through 2026 under license from the Miss USA organization.

13. After the business relationship ended, Defendant began a sustained campaign of posting false and defamatory statements about Plaintiff on social media platforms, including Facebook and Instagram, and on public podcasts. The defamatory statements have continued over an extended period from at least January 2024 through 2026.

14. On or about September 28, 2024, Defendant appeared on the "Divinely Disruptive" podcast, during which she publicly accused Plaintiff of corruption, fraud, and stealing her business. Defendant described Plaintiff as "#MrGreed" and "#evil." The podcast episode was published and made available to the general public.

15. On or about October 1, 2024, Defendant published a lengthy post on Facebook in which she described Plaintiff as her "business partner, mentor, & friend of 20 years" who "sold his soul to the devil," destroyed her life and business, stole "MOXIE," and engaged in blackmail and threats. Mason described Reid as "#MrGreed" and "#evil."

16. On or about October 21, 2024, Defendant published a post on Facebook calling Plaintiff a "con artist" and accusing him of misusing the name "MOXIE."

17. On or about November 3, 2024, Defendant published a post to Instagram stating that she "had 2 MOXIE Media Entities, MOXIE USA and MOXIE IRELAND. JScot Greed made a deal with the devil to steal MOXIE USA which has ownership of Miss Indiana USA." In this

same post, Defendant stated "BEWARE OF THESE PEOPLE THEY ARE FRAUDSTERS AND DANGEROUS."

18. On or about November 6, 2024, Defendant published multiple Instagram stories through an account labeled "TRUTH," in which she shared confidential legal and franchise documents, including the 2022 Miss Indiana USA Franchise Agreement identifying Reid and Crown Moxie, LLC. These posts were accompanied by defamatory commentary accusing Reid of lying, gaslighting, and stealing her business. Defendant compared Reid to Lou Pearlman, a notorious convicted fraudster.

19. Defendant published additional posts and stories on Instagram falsely accusing Reid of being a "con artist"; committing "fraud"; "stealing" Defendant's business; threatening and blackmailing Defendant; covering up sexual misconduct; being "evil" and "the devil"; and being a "deadbeat" who does not pay his debts.

20. Defendant published posts referencing a Netflix documentary and making false accusations about Reid in that context, calling his family "TheGREEDfamily" and accusing them of "corruption" and running the business into the ground while managing teenage girls.

21. Defendant published posts demanding that Reid "pay the piper" and "pay your debts," publicly accusing him of owing her 50% of a business.

22. Defendant published posts stating that she "will not stop calling Jscot out by name until he pays me my 50% of my business that he stole."

23. Defendant published posts that "Moxie Media" belonged to her, that she had been stripped of "her business" Moxie Media, and that "JScot Greed secretly switched out" her "name to his for ownership on the contract with Miss USA" and thus "dismantled" her business and "removed" her.

24. Defendant published posts that Plaintiff "destroyed" her dreams and "destroyed and/or dismantled" "her business Moxie Media, @missuniverseireland, and missinusa[.]"

25. Defendant published posts accusing Reid of grooming and taking pageant contestants to inappropriate venues.

26. In November 2024, Reid, through his counsel, sent Defendant a cease and desist letter demanding that she: (1) delete all false and defamatory statements from social media; (2) issue a formal retraction of her false statements; and (3) cease and desist from making any further false and defamatory statements about Plaintiff.

27. After receiving the cease and desist letter, Defendant initially deleted certain social media posts and, through her counsel, agreed not to make further defamatory statements about Reid.

28. Despite this agreement, Defendant resumed posting defamatory content about Reid. In 2025 and 2026, Defendant continued to publish false accusations on social media repeating the same defamatory themes, including accusations of fraud, theft, corruption, and other misconduct.

29. Specifically, on or around October 1, 2025, Defendant posted on Facebook and Instagram that Moxie was her company and Plaintiff had "sold his soul to the devil himself" and destroyed her dreams. Defendant further falsely stated Plaintiff was engaging in blackmail and threatened her into silence. The social media postings included Plaintiff's photograph with a clown emoji covering his face.

30. In or around April 2026, Defendant published a post to social media with the quote "[a] great teacher can change your life but a bad one can destroy it" and further referred to JScot stating "A great teacher will change your life[,] a bad one ( like J Scot Greed) can destroy it[,] be careful[.]"

31. In August 2026, Reid's counsel sent a second cease and desist letter to BQC Productions, LLC and Tom Cappello, warning against reliance on Mason's false allegations in a documentary about the Miss Universe Organization. The letter noted that Mason's allegations are false and referenced her prior agreement to cease making such statements.

32. Subsequent to Plaintiff's counsel's sending the second cease and desist letter, Defendant made several social media posts on September 21, 2026 that included defamatory statements about Plaintiff.

33. Despite previously deleting posts relating to the same false statements, on or around September 21, 2026, Defendant posted on Instagram and falsely asserted Moxie belonged to her.

34. Defendant's defamatory posts were published to a wide audience on social media and were viewed by numerous third parties, including individuals in the pageant industry, sponsors, business partners, and members of the general public.

35. Each and every one of Defendant's statements described herein is false. Reid denies all of Defendant's allegations of misconduct.

**<u>Count I: Defamation / Defamation Per Se</u>**

36. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

37. Mason published false, express, and unambiguous statements about Reid to third parties on Facebook, Instagram, podcasts, and other social media platforms, as detailed above.

38. Mason's statements accuse Reid of criminal conduct, including fraud, theft, and blackmail; professional misconduct and dishonesty in his business operations which are statements of misconduct in Reid's profession, trade, office, or occupation; and moral turpitude, including involvement in sexual misconduct.

39. The false statements relating to criminal conduct, professional misconduct, and sexual misconduct constitute defamation per se as they wrongfully attribute misconduct to Plaintiff. Such imputations are inherently likely to injure the Plaintiff's reputation and are recognized under Indiana law as defamation *per se*, which inherently inflicts harm to the Plaintiff's social and personal standing.

40. Mason's statements are false. Reid denies all allegations of misconduct attributed to him by Mason.

41. Mason acted with actual malice or reckless disregard for the truth or falsity of her statements, or at a minimum, with negligence as to the falsity of her statements.

42. As a direct and proximate result of Mason's defamatory statements, Reid has suffered damages, including, but not limited to, harm to his personal and professional reputation, severe emotional distress, humiliation, personal embarrassment, and economic harm to his business operations.

**Count II: False Light Invasion of Privacy**

43. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

44. Mason's widespread publication of false, express, and unambiguous statements about Reid on social media and podcasts placed Reid in a false light before the public by creating a misleading and highly offensive impression that Reid engaged in unprofessional, inappropriate, and criminal behavior.

45. The false light in which Reid was placed would be highly offensive to a reasonable person. Mason's statements portray Reid as a criminal, a fraud, a thief, a blackmailer, and an individual who covers up sexual misconduct.

46. Mason acted with reckless disregard as to the falsity of the publicized matter and the false light in which Reid would be placed.

47. As a direct and proximate result of Mason's conduct, Reid has suffered damages, including harm to his reputation, emotional distress, mental anguish, humiliation, and economic loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff J. Scot Reid respectfully requests that this Court enter judgment in his favor and against Defendant Brittany Mason and award the following relief:

a. Compensatory damages in an amount to be determined at trial, including but not limited to damages for harm to reputation, emotional distress, mental anguish, humiliation, and other actual damages suffered as a result of Defendant's conduct;

b. Presumed damages for defamation per se;

c. Special damages for economic losses suffered by Plaintiff;

d. Punitive damages in an amount sufficient to punish Defendant for her willful, malicious, and reckless conduct and to deter similar conduct in the future;

e. Permanent injunctive relief requiring Defendant to remove all defamatory posts and statements about Plaintiff from all social media platforms and prohibiting Defendant from making any further false and defamatory statements about Plaintiff;

f. Costs of suit and reasonable attorneys' fees;

g. Pre-judgment and post-judgment interest as allowed by law; and

h. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff J. Scot Reid hereby demands a trial by jury on al issues so triable.

Respectfully submitted,

*/s/ Benjamin J. Lewis*

Benjamin J. Lewis (ISBA No. 29701-10)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Tel: (502) 587-3645
ben.lewis@dentons.com

*Attorney for Plaintiff J. Scot Reid*